# EXHIBIT A

# PURCHASE AND SALE AGREEMENT

**34-acres and 155,390 square foot retail development located at 10000 Emmet F Lowry Expressway, Texas City, TX 77591**

This Purchase and Sale Agreement (this "**Agreement**") is made as of August __, 2026, by and between JMK5 MALL OF THE MAINLAND, LLC, a Texas limited liability company, which is currently operating as a Debtor in Possession ("**Seller**"), pursuant to Case Number 26-80397, being administered in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**"), and MALL OF THE MAINLAND PROPERTY, LLC, a Texas limited liability company ("**Purchaser**"). Seller and Purchaser are sometimes referred to collectively as the "**Parties**."

## 1. Property

Seller agrees to sell and Purchaser agrees to purchase, subject to this Agreement: (a) the land described on ***Exhibit A***; (b) all improvements located thereon; (c) Seller's assignable rights under leases, contracts, warranties, permits, plans, and intangible property relating exclusively to the land and improvements; and (d) all other property expressly listed on ***Exhibit B*** (collectively, the "**Property**"). Excluded property shall be listed on ***Exhibit C***.

## 2. Purchase Price

The purchase price is Thirteen Million Eight Hundred Twenty-Nine Thousand Five Hundred Fifty and 18/100 Dollars ($13,829,550.18) (the "**Purchase Price**"), but in order to fund the Lien Claims to be Paid at Closing (as defined below), the Purchase Price can be increased, at the Purchaser's sole discretion, up to a maximum of Fourteen Million Seven Hundred Eighty-Five Thousand One Hundred Sixty-Five Dollars ($14,785,165), subject to prorations, credits, adjustments, and the Approval Order. At Closing, the Purchase Price shall be applied in the following order:

1. Closing costs, taxes, and other amounts approved by the Court;
2. Amounts required to satisfy and obtain releases of all liens, claims or encumbrances that are itemized in the ***Exhibit D*** hereto ("**Lien Claims to be Paid at Closing**") and to pay all secured claims against the Property, all taxes, all priority claims, and allowed administrative expenses, including but not limited to attorneys' fees of Seller, Plains State Bank, and PACEWell 3 LLC (currently estimated at approximately $300,000); and
3. Any remaining amount as directed by the Approval Order and closing statement.

No provision requires payment contrary to lien priority or the Approval Order.

## 3. Earnest Money and Escrow

Within 3 business days after the Court's entry of the Approval Order, but in any event not later than September 2, 2026, Purchaser shall deposit 2.5% of the Purchase Price ($345,738.76) (the "**Earnest Money**") with Fidelity National Title located at 440 Louisiana St. # 1100, Houston, Texas 77002 ("**Escrow Agent**"), which Earnest Money shall not be refundable under any circumstance after September 2, 2026. All signatures, funds, and closing instruments delivered before satisfaction of Section 6 shall be held in escrow and may not be released except in accordance with joint written instructions consistent with the Approval Order.

## 4. Due Diligence and Access

Until September 2, 2026, Purchaser may inspect title, survey, environmental condition, leases, rent rolls, contracts, litigation records, financial statements, zoning, physical condition, and financing. Access is

subject to Seller's reasonable availability, tenant rights, insurance requirements, and reasonable restoration obligations. Purchaser may terminate before expiration of the due-diligence period (on or before September 2, 2026) by written notice, whereupon the Earnest Money shall be returned, less independent consideration of $100.

## 5. Title and Survey

Seller shall cause the title company to issue a commitment and provide legible copies of exception documents. Purchaser shall state objections within 15 days after receipt of the last provided commitment, exception documents, and current survey. Seller may elect, but are not obligated, to cure objections other than liens required to be discharged by the Approval Order. The deed shall be a special warranty deed, subject only to permitted exceptions approved by Purchaser and the Court.

## 6. Court Approval - Absolute Condition Precedent

The Parties acknowledge the Bankruptcy Proceeding that is currently pending in the Court. This Agreement and every transaction contemplated by it are expressly conditioned upon written approval by the Court authorizing the sale and Closing on terms reasonably acceptable to Purchaser, Seller, and Plains State Bank, and acceptable to the Court (the "**Approval Order**"). The Approval Order must, to the extent applicable:

- Confirm the Seller's authority to consummate the transaction;
- Authorize conveyance of the Property and specify the claims, liens, and interests to be released, paid, transferred to proceeds, retained, or otherwise treated pursuant to the Lien Claims to be Paid at Closing;
- Approve the Purchase Price, closing costs, and distribution of proceeds to pay the Lien Claims to be Paid at Closing;
- Provide that the remainder of the Purchase Price, after payment of the Lien Claims to be Paid at Closing pursuant to the Approval Order, shall be distributed pursuant to a confirmed chapter 11 plan or further Court order.
- Authorize execution and delivery of all closing documents and turnover of possession, leases, deposits, books, records, rents, and management control; and
- Provide that the approved transaction does not violate any injunction, receivership restriction, or prior Court order.

## 7. No Other Conditions

Purchaser's obligation to close is not conditioned upon (i) Purchaser obtaining a senior acquisition loan or any other loan, (ii) further internal approvals by Purchaser after the execution of this Agreement, (iii) the outcome or review of any due diligence after September 2, 2026, or (iv) anything else other than Court approval.

## 8. Seller Deliveries and Covenants

- Maintain the Property in the ordinary course, subject to Court control;
- Provide current leases, amendments, rent roll, tenant ledgers, contracts, notices, financial records, tax records, insurance information, litigation files, and environmental reports;
- Enter no new lease, amendment, material contract, financing, transfer, or encumbrance outside the ordinary course without Purchaser and the Court's approval;
- Promptly notify Purchaser of any casualty, condemnation, default, litigation, lien, or material adverse change; and

- Cooperate in seeking the Approval Order without representing that approval is assured.

## 9. Third-Party Brokerage

The Property will be marketed for sale by Moody Rambin or such other broker approved by the Court. Moody Rambin will have 30 days following the Approval Order to market the Property and attempt to secure a higher and better offer than the terms reflected in this Agreement. In addition, Seller shall engage Moody Rambin (subject to Court approval) to manage the Property up to the Closing. Seller, Purchaser, and Plains State Bank acknowledge that Purchaser currently intends to engage Moody Rambin to manage the Property after Closing, and that Moody Rambin's engagement shall be subject to all requirements of the Bankruptcy Code and the Bankruptcy Rules.

## 10. Higher and Better Bids

Purchaser's purchase of the Property is subject to higher and better bids. If this Agreement is not terminated by September 2, 2026, then if the Property is sold to a third party unaffiliated with Purchaser, Purchaser will be entitled to a breakup fee of 3% of the Purchase Price.

## 11. Representations

Seller's representations shall be limited to those approved by the Court and shall address organization, authority, no conflicting agreements, leases and rent roll, contracts, litigation, notices, environmental matters, taxes, and foreign-person status. Purchaser's representations shall address organization, authority, funds, investment sophistication, and no broker involvement.

## 12. Closing

Closing shall occur on or before November 2, 2026, at the title company, provided all conditions have been satisfied or properly waived. Seller shall deliver the deed, bill of sale, assignments, tenant notices, lien releases or court-approved lien treatment, FIRPTA affidavit, authority documents, and possession. Purchaser shall deliver the Purchase Price, assumption/conversion documents, authority documents, and closing statement.

## 13. Failure of Approval; Termination

If the Court declines approval, either Party may terminate this Agreement. If termination occurs prior to September 2, 2026, then upon termination, all escrowed funds and signatures shall be returned or destroyed as appropriate, neither Party shall have further liability except for obligations expressly surviving termination.

## 14. Default and Remedies

No default may be asserted based solely on a Court's refusal or failure to approve the transaction. If Purchaser defaults after all conditions are satisfied, Seller's sole remedy shall be retention of Earnest Money as liquidated damages. If Seller defaults after all conditions are satisfied, Purchaser may elect return of Earnest Money and reimbursement of documented third-party diligence costs up to $10, or specific performance if authorized by the Approval Order. Neither Party is liable for consequential or punitive damages.

## 15. Casualty and Condemnation

Material casualty or condemnation before Closing gives Purchaser the right to terminate or proceed with assignment of proceeds and a court-approved credit. "Material" means a loss reasonably estimated to exceed $250,000.00 or materially impair access, occupancy, or the contemplated financing.

## 16. Assignment

Purchaser may assign this Agreement to an affiliate with the written approval of Plains State Bank and PACEWell3 LLC and, if required, Court approval, but remains liable unless expressly released. Seller may not assign this Agreement except as authorized by the Approval Order.

## 17. Miscellaneous

Texas law governs. Venue shall lie in the Court administering the Bankruptcy Proceeding to the fullest extent permitted. Amendments must be written and signed by the Parties and approved by the receiver and court when required. This Agreement may be executed in counterparts and electronically. The PSA, exhibits, and documents incorporated by reference constitute the entire agreement concerning the sale.

**SELLER: JMK5 MALL OF THE MAINLAND, LLC**

By: ___________________________________

Name: Jerome M. Karam

Title: _________________________________

Date: __________________________________

**PURCHASER: MALL OF THE MAINLAND PROPERTY, LLC**

By: A Shah

Name: Ash Shah

Title: Manager

Date: 8-28-26

## Exhibits

- Exhibit A - Legal Description
- Exhibit B – Acquired Property
- Exhibit C – Excluded Property
- Exhibit D – Lien Claims to be Paid at Closing

**EXHIBIT A**
**LEGAL DESCRIPTION**

Being a tract or parcel containing 34.782 acres (1,515,112 square feet) of land situated in the William K. Wilson League, Abstract Number 208, Galveston County, Texas; being all of a called 34.790 acre tract of land conveyed to Coastline Retail Center, Inc., as described by deed recorded under Galveston County Clerk's File (G.C.C.F.) Number 2010046474; being out of and a part of Lot 5 (Developer's Parcel), MALL OF THE MAINLAND, a subdivision plat of record at Plat Record 18, Map Number(s) 446-448, Galveston County Map Records; said 34.782 acre tract of land being more particularly described as follows (bearings are grid and oriented to the Texas State Plane Coordinate System, South Central Zone Number 4204., US Survey Feet, NAD83(NA2011), WGS84; distances are surface and may be converted to grid using a combined scale factor of 0.999863);

COMMENCING at a 1-inch iron pipe (having Texas State Plane Grid Coordinates, of X=3,235,287.79 and Y=13,717,265.18) found on the westerly right-of-way (R.O.W.) line of Century Boulevard (R.O.W. Width Varies) and marking the northeast corner of Lot 14, Reserve Tract "I", MALL OF THE MAINLAND and the southeast corner of a called 412.6 acre tract of land conveyed to Texas City Economic Development Corporation as described by deed recorded under G.C.C.F. Number 2008059944;

THENCE, South 88°00'47" West, departing said westerly R.O.W. line and along the common line of said 412.6 acre tract and said Lot 14; a distance of 796.18 feet to a 5/8-inch iron rod found marking the northerly common corner of said Lot 14 and Lot 5; said iron rod for the northeast corner and POINT OF BEGINNING of the herein described tract;

THENCE, South 02°03'28" East, along a common line of said Lots 5 and 14, a distance of 13.29 feet to a 5/8-inch iron rod found marking a point of curvature for a curve to the left;

THENCE, Southerly, an arc distance of 35.13 feet along said curve to the left, having a radius of 242.50 feet, a central angle of 08°18'01", and a chord which bears South 06°12' 28" East, 35.10 feet to a 5/8-inch iron rod found marking an angle point and for the most northerly corner of Lot 2 and a called 13.633 acre tract of land conveyed to Coastline Retail Center, Inc. as described by deed recorded under G.C.F. Number 2012021698;

THENCE, along the common line(s) of said Lot 2 and Lot 5, the following courses and distances: South

15°54'20" West, a distance of 420.12 feet to a PK Nail found marking an angle point;
South 74°05'40 East, a distance of 106.02 feet (called 105.17 feet) to a PK Nail found marking an angle point;
South 15°54'20" West, a distance of 113.84 feet to an "X" cut in concrete found marking an angle point;
South 74°05'40" East, a distance of 61.92 feet to an "X" cut in concrete found marking an angle point; South 15°54'20" West, a distance of 641.98 feet to an "X" cut in concrete found marking an angle point;
South 74°05'40" East, a distance of 404.50 feet to a PK Nail found marking a point of curvature for a curve to the left; Northeasterly, an arc distance of 67.17 feet along said curve to the left, having a radius of 64.00 feet, a central angle of 60° 08'12", and a chord which bears North 75050'14" East; 64,13 feet to an "X" cut in concrete found marking an angle point;
North 45°56'31" East, a distance of 154.67 feet to an "X" cut in concrete found marking a point of curvature for a curve to the left;
Northeasterly, an arc distance of 58.25 feet along said curve to the left, having a radius of 111.50 feet, a central angle of 29° 55'57" and a chord which bears North 30°55'25" East, 57.59 feet to an "X" cut in concrete found marking an angle point;
North 15°54'20" East, a distance of 248.40 feet to a "V" cut in concrete found marking an angle point;
South 74°05'40" East, a distance of 182.50 feet to an "X" cut in concrete found marking a point of curvature for a curve to the left;
Easterly, an arc distance of 93.69 feet along said curve, to the left, having a radius of 300.00 feet, a central angle of 17°53'37", and a chord which bears South 83°02'27" East, 93.31 feet to 5/8-inch iron rod found

marking an angle point; North 88°00'47" East, a distance of 59.15 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set in the westerly R.O.W. line of Century Boulevard (R.O.W. Width Varies) and for the most easterly common corner of said Lots 2 and 5;

THENCE, South 01°59'26" East, along said westerly R.O.W. line, a distance of 35.00 feet to a 5/8-inch iron rod found marking the northeast corner of Lot 13, Reserve Tract "H", MALL OF THE MAINLAND;

THENCE, along the common line(s) of said Lot 5 and Lot 13, the following courses and distances:

South 88°00'47" West, a distance of 59.15 feet to a 5/8-inch iron rod found marking a point of curvature for a curve to the right;
Westerly, an arc distance of 104.61 feet along said curve to the right, having a radius of 335.00 feet, a central angle of 17°53'33", and a chord which bears North 83°02'27" West, 104.19 feet to 5/8-inch iron rod found marking an angle point; North 74°05'40" West, a distance of 136.50 feet to a 5/8-inch iron rod found marking an angle point;
South 15°54'20" West, a distance of 213.40 feet to a 5/8-inch iron rod found marking a point of curvature for a curve to the right;
Southwesterly, an arc distance of 82.57 feet along said curve to the right, having a radius of 157.50 feet, a central angle of 30°02'12", and a chord which bears South 30°55'29" West, 81.63 feet to 5/8-inch iron rod found marking an angle point; South 45°56'31" West, a distance of 212.93 feet to a 1/2-inch iron rod found marking the northerly common corner of Lot 12 and Lot 13;

THENCE, North 74°05'40" West a distance of 427.97 feet to a 5/8-inch iron rod found marking the northerly end of a cutback corner;

THENCE South 56°34'21" West, along said cutback line, a distance of 26.08 feet to a 1/2-inch iron rod found marking the southerly end of said cutback corner;

THENCE South 14°56'45" West, a distance of 381.75 feet to a 1/2-inch iron rod found in the curved northerly R.O.W. line of F.M. 1764 (a.k.a. E.F. Lowry Expressway) (R.O.W. Width Varies) and for a point of curvature for a curve to the right;

THENCE, Westerly, an arc distance of 35.00 feet along said northerly R.O.W, line and said curve to the right, having a radius of 7,579.34 feet, a central angle of 00°15'52", and a chord which bears North 75° 11'22" West, 35.00 feet to a 1/2-inch iron rod found marking an angle point;

THENCE, along the common line(s) of said Lots 3 and 5; the following courses and distances:

North 14°56'45" East, departing said northerly R.O.W. line, a distance of 470.21 feet to a PK Nail set marking an angle point;
North 74°05'40" West, a distance of 108.60 feet to a PK Nail set marking an angle point; North 15°54'20" East, a distance of 210.32 feet to a PK Nail found marking an angle point; North 74°05'40" West, a distance of 33.50 feet to a PK Nail found marking an angle point;
North 15°54'20" East, a distance of 198.67 feet to an "X" cut in concrete found marking an angle point; North 74°05'40" West, a distance of 20.00 feet to an angle point;
North 15°54'20" East, a distance of 35.00 feet to an angle point; North 74°05'40" West, a distance of 414.70 feet to an angle point;
South 60°58'41" West, a distance of 186.16 feet to a PK Nail found marking an angle point;
South 15°54'20" West, a distance of 380.52 feet to an "V" cut in concrete found marking the most westerly corner of said Lot 3 and for an angle point of the herein described tract;

THENCE, North 74°05'40" West, a distance of 177.19 feet to a 1/2-inch iron rod found marking the northerly end of a cutback corner;

THENCE, South 59°45'53" West, along said cutback line, a distance of 24.38 feet to a 1/2-inch iron rod found marking the southerly and of said cutback corner;

THENCE, South 22°23'58" West, a distance of 343.13 feet to a 5/8-inch iron rod found in the aforesaid curved northerly R.O.W., line of F.M. 1764 (a.k.a E.F. Lowry Expressway) (R.O.W. Width Varies) and for a point of curvature for a curve to the right;

THENCE, Northwesterly, an arc distance of 35.00 feet along said northerly R.O.W. line and said curve to the right, having a radius of 7,579.34 feet, a central angle of 00°15'52", and a chord which bears North 67°44'09" West, 35.00 feet to a
5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking the most southerly common corner of Lots 4 and 5;

THENCE, partially along the common line(s) of said Lots 4 and 5, and along the common line(s) of the aforesaid called 34.790 acre tract of land and of a called 13.6535 acre tract of land conveyed to JMK5 Texas City, LLC as described by deed recorded under G.C.C.F. Number 2014026208, the following courses and distances:

North 22°23'58" East, a distance of 398.69 feet to an "X" cut in concrete found marking an angle point; South 74°05'40" East, a distance of 167.57 feet to a PK Nail found marking an angle point;
North 15°54'20" East, a distance of 358.82 feet to a PK Nail found marking an angle point;
North 74°05'40" West, a distance of 363.50 feet to a PK Nail found marking an angle point, from which the original interior corner of said Lots 4 and 5 bears North 74°05'40" West, 19.00 feet;
North 15°54'20" East, continuing along the common line(s) of said called 34.790 acre tract and said called 13.6535 acre tract, a distance of 136.67 feet to an "X" cut in concrete found marking an angle point;
North 74°05'40" West, a distance of 50.00 feet to an angle point; North 15°54'20" East, a distance of 4.75 feet to an angle point; North 74°05'40" West, a distance of 208.00 feet to an angle point; South 15°54'20" West, a distance of 100.42 feet to an angle point;
North 74°05'40" West, a distance of 25.00 feet to an "X" cut in concrete found marking an angle point; South 15°54'20" West, a distance of 75.00 feet to an "X" cut in concrete found marking an angle point; South 60°54'20" West, a distance of 77.78 feet to a "V" cut in concrete found marking an angle point; North 74°5'40” West, a distance of 120.00 feet to a PK Nail found marking an angle point;
South 15°54'20' West, a distance of 30.00 feet to a PK Nail found marking an angle point;
North 74°05'40" West, at 160.00 feet passing the original interior corner of Lots 4 and 5, a distance of 215.00 feet to a PK Nail found marking an angle point;
South 15°54'20" West, a distance of 199.29 feet to a PK Nail found marking an angle point;
North 65°34'15" West, at 161.95 feet passing the most westerly corner of said called 13.6535 acre tract, continuing in all for a total distance of 280.32 feet to a 1-inch iron pipe found marking a point of curvature for a curve to the right;

THENCE, Northwesterly, an arc distance of 426.61 feet along said curve to the right, having a radius of 300.00 feet, a central angle of 81°28'32", and a chord which bears North 24°49'56" West, 391.56 feet to a 5/8-inch iron rod found marking an angle point;

THENCE, North 15°54'20" East, a distance of 200.05 feet to a 5/8-inch iron rod found marking the southerly end of a cutback line;

THENCE, North 29°05'40" West, along said cutback line, a distance of 28.29 feet to a 5/8-inch iron rod found marking the northerly end of said cutback line;

THENCE, North 74°5'40” West, a distance of 92.51 feet to a 5/8-inch iron rod found marking a point of curvature for a curve to the left;

THENCE, Westerly, an arc distance of 92.87 feet along said curve to the left, having a radius, of 292.00

feet, a central angle of 18°13'20", and a chord which bears North 83°12'03" West, 92.48 feet to a 5/8-inch iron rod found marking an angle point;

THENCE, South 87°41'01" West a distance of 139.12 feet to a 1/2-inch iron rod found on the easterly R.O.W. line of F.M. 2004 (120 feet wide) and marking an angle point;

THENCE, North 02°19'00" West, along said easterly R.O.W. line, a distance of 35.00 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking the most westerly corner of said Lot 5 and the herein described tract;

THENCE, along the common line(s) of Lots 1 and 5 and a called 8.304-acre tract of land conveyed to Sears, Roebuck and Co. as described in deed recorded under G.C.C.F. Number 9010306, the following courses and distances:

North 87°41'01" East, a distance of 139.12 feet to a 5/8-inch iron rod found marking a point of curvature for a curve to the right;
Easterly, an arc distance of 104.02 feet along said curve to the right, having a radius of 327.00 feet, a central angle of 18°13'31", and a chord which bears South 83°12'08" East, 103.58 feet to a 5/8-inch iron rod found marking an angle point; South 74°05'40" East, a distance of 154.01 feet to an "X" cut in concrete found marking an angle point;
South 15°54'20" West, a distance of 255.05 feet to a PK Nail set marking a point of curvature for a curve to the left; Southerly, an arc distance of 88.67 feet along said curve to the left, having a radius of 258.50 feet, a central angle of 19°39'16", and a chord which bears South 06°4'42" West, 88.24 feet to an angle point, from which an "X" cut in concrete found bears North 54°15' West, 1.06 feet;
South 74°05'40" East, a distance of 684.12 feet to a PK Nail found marking an angle point; North 15°54'20" East, a distance of 478.00 feet to a PK Nail found marking an angle point;

North 74°05'40" West, a distance of 424.75 feet to an "X" cut in concrete found marking an angle point; North 15°54'20" East, a distance of 29.84 feet (called 30.00 feet) to a PK Nail found marking an angle point; North 74°05'40" West, a distance of 315.95 feet to 5/8-inch iron rod found marking the most northerly corner of said Lot 1 and said called 8.304 acre tract; said iron rod for an angle point of the herein described tract;

THENCE, North 15°54'20" East, a distance of 252.16 feet (called 252,00 feet) to the most northerly corner of said Lot 5 and the herein described tract, from which a 5/8-inch iron rod with plastic cap stamped "RPLS 2068" found marking the northwest corner of Lot 6, Reserve Tract "A" and said MALL OF THE MAINLAND subdivision plat bears North 74°05'40" West, 504.24 feet, and also from which a 5/8-inch iron rod and a 1/2-inch iron rod found bear South 16°15' East, 0.25 feet and South 05°30' West, .029 feet, respectively;

THENCE, South 74°05'40" East, along the southerly line of the aforesaid called 412.6 acre tract, a distance of 1,634.07 feet to a 1-inch iron pipe found marking an angle point;

THENCE, North 88°00'47" East, along said southerly line, a distance of 551.02 feet to the POINT OF BEGINNING and containing 34.782 acres (1,515,112 square feet) of land, more or less;

**SAVE AND EXCEPT** a 4.85 acre (211,288 square feet) tract of land (Movie Theater Tract) and a 6.32 acre (275,165 square feet) tract of land (Racetrack Tract) for a NET ACREAGE of 23.615 Acres (1,028,659 square feet) of land, more or less. Said 4.85 acres and 6.32 acres being described as follows:

SAVE AND EXCEPT a 4.85 acre portion of Lot 5, of MALL OF THE MAINLAND, a subdivision in Galveston County, Texas, according to the map or plat thereof recorded in Plat Record 18, Map No. 446, of the Map Records in the Office of the County Clerk of Galveston County, Texas, said tract being more particularly described by metes and bounds as follows:

Commencing at the most Northerly corner of said Lot 5; Thence South 64°31'39" West over and across said Lot 5, a distance of 154.67 feet to the Point of Beginning of the herein described tract;

Thence continuing over and across said Lot 5 the following courses and distances: South 16°27'53" West, a distance of 358.00 feet;
North 74°05'04" West, a distance of 465.90 feet,
North 15° 54'56" East, a distance of 6.00 feet (L1); North 74°05'04" West, a distance of 96.10 feet (L2); South 15°54’56" West, a distance of 1.00 feet (L3); North 74°05'58" West, a distance of 36.20 feet (L4); South 15°54'02" West, a distance of 9.00 feet (L5); North 74°05'58" West, a distance of 48.50 feet (L6);

North 15°54'02" East, a distance of 9.00 feet (L7); North 74°05'58" West, a distance of 36.00 feet (L8); North 15°54'02" East, a distance of 1.00 feet (L9); North 74°05'58" West, a distance of 37.30 feet (L10); North 15°50'17" East, a distance of 23.00 feet (L11); North 74°09'43" West, a distance of 104.50 feet (L12);
North 15°22'30" East, a distance of 200.70 feet;
South 74°04'48" East, a distance of 430.15 feet;
North 88°05'27" East, a distance of 419.85 feet to the Point of Beginning of the herein described tract;

and also **SAVE AND EXCEPT** a 6.320 acre tract of land out of Lot 5, of MALL OF THE MAINLAND, a subdivision in Galveston County, Texas, according to the Map or Plat recorded in Volume 18, Page 446 in the Office of the County Clerk of Galveston, Texas, said tract being more particularly described as follows:

Commencing at the most Northwesterly corner of Lot 2, of said MALL OF THE MAINLAND, said point also lying in the Southerly line of a 273.6172 acre tract of land out of the W.K. Wilson Survey, Abstract No. 208, said tract conveyed to Texas City Economic Development Corp., according to deed recorded under Instrument No. 2008059944 in the Office of the County Clerk of Galveston County, Texas;

Thence South 02°03'33" West along the Westerly line of Lot 2, of said MALL OF THE MAINLAND, a distance of 13.29 feet to a point of curvature;

Thence along a curve to the left, said curve having a radius of 242.50 feet, a chord bearing of South 06°12'33" East, a chord length of 35.11 feet, and an arc length of 35.14 feet to a point;

Thence South 15°54'15" West, a distance of 14.21 feet to the Point of Beginning of the herein described tract; Thence South 15°54'15" West, a distance of 405.91 feet to a point for corner;

Thence South 74°05'45" East, a distance of 105.17 feet to a point for corner; Thence South 15°54'15" West, a distance of 113.84 feet to a point for corner; Thence South 74°05'45" East, a distance of 61.92 feet to a point for corner; Thence South 15°54'15" West, a distance of 592.17 feet to a point for corner;

Thence South 75°03'20" West, a distance of 9.54 feet to a point for corner, said point lying in the Easterly line of Lot 3, of JMK5 ADDITION No. 1, a subdivision in Galveston County, Texas, according to the Map or Plat thereof recorded under Instrument No. 2018036180 in the Office of the County Clerk of Galveston County, Texas;

Thence North 14°56'40" East along the Easterly line of Lot 3, of said JMK5 ADDITION No. 1, a distance of 26.67 feet to a point for corner;

Thence North 74°05'45' West, a distance of 108.60 feet to a point for corner; Thence North 15°54'15" East, a distance of 210.32 feet to a point for corner; Thence North 74°05'45" West, a distance of 33.50 feet to a point for corner; Thence North 15°54'15" East, a distance of 198.67 feet to a point for corner; Thence North 74°05'45" West, a distance of 20.00 feet to a point for corner;

Thence North 15°54'15" East, a distance of 35.00 feet to a point for corner;

Thence North 74°05'45" West along the Northerly line of Lot 3, of said JMK5 ADDITION No. 5, a distance of 414.65 feet to a point for corner;

Thence North 15°54'15" East over and across Lot 5, of said MALL OF THE MAINLAND, a distance of 290.46 feet to a point for corner;

Thence South 74°05'04" East, a distance of 282.82 feet to a point for corner; Thence North 16°27'20" East,

a distance of 358.00 feet to a point for corner;

Thence North 88°05'27" East, a distance of 140.10 feet to the Point of Beginning of the herein described tract.

and also, **SAVE & EXCEPT** that certain 0.611 acre tract of land conveyed to Galveston County in Deed filed for record at Galveston County Clerk's File No. 2023057980.

and also, **SAVE & EXCEPT** that certain 6.1574 acre tract of land described by metes and bounds as follows:

Being a tract or parcel of land containing 6.1574 acres (268,216 square feet) of land situated in the William K. Wilson League, Abstract Number 208, Galveston County, Texas; being out of the residue of a called 34.782 acre tract of land conveyed to JMK5 Mall of the Mainland, LLC as described by deed recorded under Galveston County Clerk's File (G.C.C.F.) Number 2020002315; being out of Lot 5 (Developer's Parcel), MALL OF THE MAINLAND, a subdivision plat of record at Plat Record 18, Map Number(s) 446-448, Galveston County Map Records (G.C.M.R.); said 6.1574 acre tract of land being more particularly described as follows (bearings are grid and oriented to the Texas State Plane Coordinate System, South Central Zone Number 4204, US Survey Feet, NAD83, WGS84; distances are surface and may be converted to grid using a combined scale factor of 0.999863);

BEGINNING at a cut “X” in concrete found marking an angle point in the northerly line(s) of Lot 1 and Lot 5, MALL OF THE MAINLAND and of a called 8.304 acre tract of land conveyed to JMK5 Sears, LLC as described by deed recorded under
G.C.C.F. Number 2020052326;

THENCE, continuing over and across said Lot 5, MALL OF THE MAINLAND, the following courses and distances:

North 15°54'20° East, along a common line of said Lot 1 and Lot 5, MALL OF THE MAINLAND, at 29.84 feet passing a PK Nail found for reference, continuing in all for a total distance of 141.05 feet to a PK Nail set marking the most northerly corner of the herein described tract;

South 74°05'40° East, a distance of 758.49 feet to a PK Nail set marking an angle point; North 70°19'01°

East, a distance of 136.16 feet to a PK Nail set marking an angle point;

South 74°05'16° East, a distance of 27.59 feet to an “X” cut in concrete curb set marking the most northerly corner of a called 4.85 acre tract of land conveyed to JMK5 Movies, LLC as described by deed recorded under G.C.C.F. Number 2020002430;

South 15°22'02° West, along the most westerly line of said 4.85 acre tract, a distance of 200.70 feet to an

angle point; South 74°10'11° East, along a southerly line of said 4.85 acre tract, a distance of 104.50 feet

to an angle point;

South 15°49'49° West, along a southerly line of said 4.85 acre tract, a distance of 23.00 feet to an angle point;

South 74°06'26° East, along a southerly line of said 4.85 acre tract, a distance of 37.30 feet to the most easterly corner of the herein described tract;

South 15°53'34° West, at 1.00 feet passing a southerly corner of said 4.85 acre tract, continuing in all for a total distance of 23.81 feet to an angle point;

North 74°04'50° West, a distance of 165.78 feet to an angle point; South 15°55'10° West, a distance of 29.91 feet to a building face; South 74°04'50° East, a distance of 1.33 feet to an angle point; South 15°54'20° West, a distance of 0.83 feet to an angle point; South 74°05'40° East, a distance of 10.75 feet to an angle point; South 15°54'20° West, a distance of 30.50 feet to an angle point; South 74°05'40° East, a distance of 9.83 feet to an angle point; South 15°54'20° West, a distance of 76.50 feet to an angle point; South 74°05'40° East, a distance of 7.71 feet to an angle point; South 15°54'20° West, a distance of 82.79 feet to an angle point; South 60°54'20° West, a distance of 17.38 feet to an angle point; South 15°54'20° West, a distance of 9.86 feet to a building face; North 74°04'50° West, a distance of 44.31 feet to an angle point; North 75°36'03° West, a distance of 7.72 feet to an angle point; North 74°05'40° West, a distance of 215.73 feet to an angle point; North 15°54'20° East, a distance of 46.47 feet to an angle point; North 74°05'40° West, a distance of 20.83 feet to an angle point; South 60°54'20° West, a distance of 14.14 feet to an angle point; North 74°05'40° West, a distance of 82.21 feet to an angle point; South 15°58'37° West, a distance of 44.88 feet to an angle point; North 74°05'40° West, a distance of 28.48 feet to an angle point; South 15°54'20° West, a distance of 24.95 feet to an angle point; South 74°05'40° East, a distance of 17.74 feet to an angle point; North 15°54'20° East, a distance of 4.83 feet to an angle point; South 74°05'40° East, a distance of 24.60 feet to an angle point;

South 15°54'20° West, a distance of 5.09 feet to an angle point; North 74°05'40° West, a distance of 3.45 feet to an angle point; South 15°54'20° West, a distance of 20.48 feet to an angle point; North 74°05'40° West, a distance of 4.42 feet to an angle point; South 15°54'20° West, a distance of 25.05 feet to an angle point; South 74°05'40° East, a distance of 27.11 feet to an angle point;

South 15°54'20° West, a distance of 25.50 feet to the most southerly corner of the herein described tract;

North 74°05'40° West, a distance of 38.60 feet to an angle point;

South 15°54'20° West, a distance of 0.31 feet to an angle point; North 74°05'40° West, a distance of 22.97

feet to an angle point; North 15°55'10° East, a distance of 10.76 feet to an angle point; North 74°05'40° West, a distance of 31.00 feet to an angle point; North 15°55'10° East, a distance of 42.50 feet to an angle point;

North 74°04'50° West, a distance of 26.79 feet to the easterly line of the aforesaid Lot 1, MALL OF THE MAINLAND and called 8.304 acre tract;

THENCE, North 15°54'20° East, along said easterly line, a distance of 118.66 feet to an angle point;

THENCE, South 74°05'40° East, departing said easterly line and over and across said Lot 5, a distance of 33.39 feet to an angle point;

THENCE, North 15°54'20° East, a distance of 36.00 feet to an angle point;

THENCE, North 74°05'40° West, a distance of 33.39 feet returning to the easterly line of the aforesaid Lot 1, MALL OF THE MAINLAND and called 8.304 acre tract;

THENCE, North 15°54'20° East, along said easterly line, a distance of 166.62 feet to a PK Nail found marking a common corner of said Lot 1 and Lot 5, MALL OF MAINLAND and for an angle point;

THENCE, North 74°04’50” West, along a northerly line of said Lot 1, a distance of 424.75 feet to the POINT OF BEGINNING and containing 6.1574 acres (268,216 square feet) of land.

# JMK MALL OF THE MAINLAND EQUIPMENT INVENTORY LIST

| Asset | Date purchased | Initial value |
|---|---|---|
| EFA3422 -Sodi RTX Karts (Pre-Owned, Qty 28) with Custom Graphics Kit. Sodi LRX Karts (Pre-Owned, Qty 12) with Customer Graphics Kit. Further Described on Biz Karts, Inc. Invoice No. 2420 Dated 12/01/20. | 12/16/20 | $207,400.00 |
| EFA3423 - Remote Control Handsets, Timing Sensors, Beacons, Black Boxes, and Barrier. | 12/10/20 | $ 159,960.00 |
| EFA3429 - (1) Ropes course 26' 6" x 44' foot print, 1 level, 5 pole aerial course. (2) Boxblaster Virtual Reality complete 4-player attraction. (3) Skates (275) and Skate mates (18) as described on LW Skates. (4) Single Line Indoor Zipline with Brakes, Cable Attachments & Hardware, Harnesses, Trolleys, Lanyards, Helmets, Carabiners, Spiral Staircase, and other Launch Structures and Support Hardware and Services. | 1/19/21 | $ 207,870.00 |
| EFA3438 - (1) MINI-BOWL Samll Bowling Lanes Two lane unti. (2) 23) – 65" TV's, (17) – 32" Tv's, (15) – iPads, (23) – Ceiling Mounts, (17) – Wall Mounts, (15) - iPad Cases. | 2/26/21 | $ 268,490.16 |
| EFA3452 - (1) – 9-Holes Mini Links Standard Mini Golf Course (2) – Riverbank Belfair Pool Tables, 8ft-Riverbank, includes a play package and champion green Felt, | | $ 24,677.72 |
| | | **$868,397.88** |
| (1) - Zipline, 30ft. Launch Platform | 2/22/22 | **$ 84,236.00** |
| (1) (400) – Alexa Dining Chairs. Color Gold. (2) (40) – Titan PRO 72" Round Plastic Folding Tables. | 10/27/21 | **$ 70,864.52** |
| (1) 2 – 10' Vent Hood Type 1. 2 – 8' Vent Hood Type 1. (2) Restaurant Equipment. (3) Reimbursement for previously purchased restaurant furniture.<br>5 – Flash Furniture Hercules Alon 3 Piece Reception Seating in Black.<br>1 – Restaurant full circle booth, upholstered. | 11/24/21 | **$ 188,722.25** |
| (1) Chiller, variable speed screw chiller. Model No. 23XRVA1A2NPJR251 | 2/16/22 | **$ 136,414.00** |
| | | **$1,348,634.65** |

| | | |
|---|---|---|
| (1) ANDREW Garcia Proposal | | |
| 1 - 2 – 10' Vent Hood Type 1 - Proposal 10-19/21 | | $29,200.00 |
| 1 - 2 – 8' Vent Hood Type 1 | | $23,500.00 |
| | | **$52,700.00** |

| | | |
|---|---|---|
| (2) RESTAURANT EQUIPMENT - Chef Mart Invoice 11192021BAS 11/29/21: | | |
| 1 - ICE MAKER, CUBE-STYLE - Hoshizaki Model No. KM-660MAJ | | $ 5,423.03 |
| 1 - DISHWASHER, DOOR TYPE - CMA Dishmachlnes Model No. CMA-180-S | | $ 8,977.07 |
| 1 - THREE (3) COMPARTMENT SINK - Advance Tabco Model No. FC-3-1818-18RL-X | | $ 2,404.41 |
| 1 - REACH-IN FREEZER - Everest Refrigeration Model No. ESF1 | | $ 2,555.96 |
| 1 - REACH-IN FREEZER - Everest Refrigeration Model No. ESF3 | | $ 5,529.82 |
| 1 - REACH-IN - Everest Refrigeration Model No. ESR3 | | $ 4,873.49 |
| 1 - WORK TABLE, STAINLESS STEEL TOP - Advance Tabco Model No. KAG-3012 | | $ 2,661.39 |
| 1 - RANGE, 36", (6) BURNERS - Venancio USA Model No. R36ST-36B | | $ 2,577.53 |
| 3 - SANDWICH/ SALAD PREPARATION REFRIGERATO - Everest Refrigeration Model No. EPBNR2 | $2,596.90 EACH | $ 7,790.70 |
| 1 - GRIDDLE, GAS, COUNTERTOP - Venancio USA Model No. R36CT-36T | | $ 2,286.91 |
| 1 - EQUIPMENT STAND, REFRIGERATED - Everest Refrigeration Model No. ECB52-6002 | | $ 3,790.26 |
| 1 - 2 ea GAS FLOOR FRYER - Venancio USA Model No. RFB50 | | $ 3,325.00 |
| 2 - ICE BIN - BK Resources Model No. UB4-18-IBCP30-10 | | $ 3,567.92 |
| 1 - BACK BAR CABINET, REFRIGERATED - Everest Refrigeration Model No. EBB90G | | $ 3,487.52 |
| 1 - DRAFT BEER COOLER - Everest Refrigeration Model No. EBD2 | | $ 3,234.64 |
| 1 - CONVEYOR OVEN, ELECTRIC - Lincoln Foodservice Model No. 2501/1346 | | $ 8,978.17 |
| 1 - HOT FOOD SERVING COUNTER / TABLE - Vollrath Model No. 38104 | | $ 2,235.96 |
| | | **$ 73,699.78** |

# JMK5 MALL OF THE MAINLAND INVENTORY LIST

| EQUIPMENT AVS EGV &DIRECT | QTY ORD. | Trade in vaule | Numbers Extended |
|---|---|---|---|
| Adrenaline Angry Birds whacker | 1 | 3,000.00 | 3,000.00 |
| Apple Marvel Photo Booth | 1 | 11,300.00 | 11,300.00 |
| Baytek Connect 4 Hoops | 1 | 13,000.00 | 13,000.00 |
| Baytek Quik Drop | 1 | 5,000.00 | 5,000.00 |
| Baytek Little Ticket Monster | 1 | 4,000.00 | 4,000.00 |
| Baytek Willy Crash Mini | 1 | 3,000.00 | 3,000.00 |
| Baytek Toilet Bowl Toss | 1 | 6,200.00 | 6,200.00 |
| Baytek Hot Shot Free Throw Fury | 1 | 10,000.00 | 10,000.00 |
| Coast to Coast Fun Zone 36" | 4 | 1,100.00 | 4,400.00 |
| Coast to Coast Sweet Stuff | 1 | 900.00 | 900.00 |
| Coastal Break the Plate | 1 | 8,000.00 | 8,000.00 |
| Coastal Ring Toss | 2 | 5,200.00 | 10,400.00 |
| Coastal Ring Toss Marquee | 1 | 1,050.00 | 1,050.00 |
| Coastal Snow Day | 1 | 3,500.00 | 3,500.00 |
| Ice Snow Ball Toss | 1 | 4,100.00 | 4,100.00 |
| Ice Ice Ball FX | 3 | 3,000.00 | 9,000.00 |
| Ice Ice ball marquee | 1 | 1,300.00 | 1,300.00 |
| Ice Monopoly Roll N Go | 2 | 7,500.00 | 15,000.00 |
| Ice Monopoly Roll N Go marquee | 1 | 2,400.00 | 2,400.00 |
| Ice NBA Hoops Matrix Dallas Mavericks | 1 | 3,000.00 | 3,000.00 |
| Ice NBA Hoops Matrix San Antonio Spurs | 1 | 3,000.00 | 3,000.00 |
| Ice NBA Hoops Matrix Houston Rockets | 1 | 3,000.00 | 3,000.00 |
| Ice NBA Hoops Mega marquee | 1 | 2,500.00 | 2,500.00 |
| Ice Whck n Win 11' | 1 | 5,500.00 | 5,500.00 |
| Ice Air FX ir Hockey | 1 | 2,700.00 | 2,700.00 |
| Incredible Technologies PGA | 2 | 2,200.00 | 4,400.00 |
| JET Quick Shot | 1 | 3,700.00 | 3,700.00 |
| Kalkomat Combo Prize Boxer | 1 | 3,700.00 | 3,700.00 |
| Andamiro Sponge Bob Pusher 2 player | 1 | 8,500.00 | 8,500.00 |
| Raw Thrills Nerf Arcade | 1 | 5,300.00 | 5,300.00 |
| Raw Thrills Space Invader Frenzy | 1 | 6,000.00 | 6,000.00 |
| Raw Thrills Fast & Furious Arcade DLX | 2 | 9,450.00 | 18,900.00 |
| Raw Thrills Halo 4 player tethered | 1 | 7,800.00 | 7,800.00 |
| Raw Thrills Jurassic Park | 1 | 6,200.00 | 6,200.00 |
| Raw Thrills Super Bikes 3 | 2 | 4,100.00 | 8,200.00 |
| Raw Thrills Minecraft Dungeon Arcade | 1 | 6,000.00 | 6,000.00 |
| Raw Thrills Big Buck Hunter Mini Reloaded | 1 | 3,000.00 | 3,000.00 |
| Raw Thrills Godzilla Kaiju Wars | 1 | 17,400.00 | 17,400.00 |
| Really Big Crane Company The Big Machine | 1 | 4,500.00 | 4,500.00 |
| Really Big Crane Company FAK Deluxe | 1 | 3,000.00 | 3,000.00 |
| Sega Power Roll | 1 | 5,450.00 | 5,450.00 |
| Sega Skill Fall | 1 | 1,800.00 | 1,800.00 |
| Stern Foo Fighters Pro | 1 | 2,600.00 | 2,600.00 |
| Stern Venom Pro | 1 | 2,600.00 | 2,600.00 |
| Step Revolution Step Maniax Deluxe | 1 | 4,900.00 | 4,900.00 |
| Team Play Carnival Wheel | 2 | 11,000.00 | 22,000.00 |
| Carnival Wheel link kit | 1 | 175.00 | 175.00 |
| Touch Magix Space Warp 66 65" | 1 | 3,500.00 | 3,500.00 |
| LAI Hyperpitch | 1 | 5,100.00 | 5,100.00 |
| Andamiro Spiderman Coin Pusher | 1 | 4,000.00 | 4,000.00 |
| Unis Big Foot Crush | 1 | 1,000.00 | 1,000.00 |
| Unis Over The Edge Plus | 1 | 4,000.00 | 4,000.00 |
| Valley Dynamo Pro Cat 93" | 1 | 10,400.00 | 10,400.00 |
| LAI Rabbids | 1 | 22,000.00 | 22,000.00 |
| LAI Rick & Morty Blips & Chitz | 1 | 9,000.00 | 9,000.00 |
| LAI Pearl Fishery 2 player | 1 | 7,000.00 | 7,000.00 |
| | | 298,625.00 | 347,375.00 |

# EXHIBIT B-3

| Qty | Make | Model | Year | Equipment Type | Serial/VIN Number |
|---|---|---|---|---|---|
| 1 | Lincoln | Vantage 300 AMP | 2016 | Used Welder | U1160800998 |
| 1 | Lincoln | Vantage ARC 300 | 2016 | Used AMP Welder | U1161000421 |
| 1 | Miller | Big Blue 300 | 2017 | Used AMP Welder | MH080147R |
| 1 | Allen Engi | AR16PBEF | 2018 | Used 15-19 Cubic Feet Powered Wheel Buggy | A160618032 |
| 1 | Doosan | P425/HP375WCUT4 | 2015 | Used Compressor | 468870UAZF15 |
| 1 | Polaris Ranger | 500 4WD | 2017 | Used Utility Vehicle | 3NSRMA505HE898431 |
| 1 | Allen Engi | AR16PBEF | 2018 | Used 15-19 Cubic Feet Powered Wheel Buggy | A160218005 |
| 1 | Lincoln | Vantage 300 **AMP** | 2016 | Used Welder | U116040 4288 |
| 1 | Multiquip | WBH-16EF | 2018 | | 180657 |
| 1 | Multiquip | WBH-16EF | 2018 | | 180735 |
| 1 | Club Car | Carryall 1500 | 2017 | Used Utility Vehicle 4WD | 859988 |
| 1 | Takeuchi | TL8CRW | 2016 | Used Skid Steer Track Loader | 200803661 |
| 1 | Husqvarna | F2-513 | 2017 | | |

| Qty | Make | Modal | Vear | Equipment Type | Serlal/VIN Number |
|---|---|---|---|---|---|
| 1 | Genie | GS-3232 | 2014 | Used Electric Scissor lift | GS3214A118286 |
| 1 | Genie | GS-3232 | 2014 | Used Electric Scissor lift | GS4614A135014 |
| 1 | Atlas Co co | AS 45 | 2017 | Used Generator | HOP121469 |
| 1 | Atlas Co co | XAS 185JDPETBV | 2013 | Used Com ressor | HOP041433 |
| 1 | APT | M190 | 2018 | Used Air Breaker | 327370M190BV |
| 1 | **APT** | M190 | 2016 | Used Air Breaker | 323698 |
| 1 | EZ-Go | S4 E | 2016 | Used Generator | 3228107 |
| 1 | JLG | **G10-55A** | 2015 | Used Variable Reach Forklift | 0160067365 |
| 1 | Hus vama | DMS240 | 2018 | Used Electric Core Drlll | |
| 1 | Hus vama | DMS240 | 2018 | Used Electric Core Drill | |

**EXHIBIT C**
**EXCLUDED PROPERTY**

NONE

## Exhibit D

**Lien Claims to Be Paid at Closing[1]**

| | | | |
|---|---|---|---|
| 1 | Dickinson ISD | ad valorem property taxes - Proof of Claim Filed | $224,127.20 |
| 2 | Galveston County | ad valorem property taxes - Proof of Claim Filed | $208,722.40 |
| 3 | Plains State Bank | Per Cash Collateral Order | $8,660,203.58 |
| 4 | PACEWell3 LLC | Per Title Policy | $3,840,000.00 |
| 5 | TaxCore Lending | Per Title Policy | $470,935.00 |
| 6 | SouthCoast Roofing | M&M Lien - Title | $125,562.00 |
| | | **Total** | **$13,529,550.18** |

1 Subject to the accrual of post-petition interests and attorneys' fees where applicable.